UNITED STATES v. DOWNING CO. (No. 1919). DOWNING CO. v. UNITED STATES (No. 1923).[1]

1. EVIDENCE, RELEVANCY OF.
    Testimony that merchandise *could* be used for paper making does not sustain a protest claiming classification under paragraph 566, tariff act of 1913, as being "used chiefly for paper making."

2. PARAGRAPH 586, TARIFF ACT OF 1913—RAGS.
    Pieces of old bags of comparatively large size, frequently entire bags cut open at one end or side, the fabric in most cases being still sound, can not be regarded as rags under paragraph 586, tariff act of 1913.

3. WASTE BAGGING—PAPER STOCK.
    Upon the testimony of a competent, undiscredited, and uncontradicted witness that half of a certain lot of pieces of old bags was of a kind chiefly used in paper making, the protest claiming classification as paper stock under paragraph 566, tariff act of 1913, should have been sustained as to 50 per cent. The rest of the importation was properly classified by the collector as waste not specially provided for under paragraph 384.

----
[1] T. D. 37946 (36 Treas. Dec., 228).

United States Court of Customs Appeals, February 25, 1919.

CROSS APPEALS from Board of United States General Appraisers, Abstract 42182.

[Modified.]

*Bert Hanson*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.
*Allan R. Brown* contra.

[Oral argument Oct. 31, 1918, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now in question consists of old bagging or pieces of gunny sacks, which were entered at the port of Boston. There were two importations, one of which is covered by protest 797813, the other by protest 802385.

In the one instance the appraiser described the merchandise as follows:

The merchandise subject of protest was found, upon examination, to consist of sugar bags made of twill burlap which had been damaged so that they could not be used as bags.

In the other instance the appraiser's report stated:

The merchandise subject of protest was found, upon examination, to be cut·bags, principally twilled sugar bags. Merchandise of this character is imported to be cut up into markers and patches for cotton bales and for barrel covers.

In each instance the appraiser returned the merchandise for duty as waste not specially provided for, dutiable at 10 per cent ad valorem under paragraph 384, tariff act of 1913. And in accordance with this advisory classification the collector assessed duty upon the importations at the rate and under the description thus indicated.

The importers thereupon filed their several protests, claiming that the merchandise was entitled to free entry as rags not otherwise specially provided for under paragraph 586 of the act, or alternatively as paper stock under either paragraph 408 or paragraph 566 thereof.

The paragraphs thus referred to read as follows:

[Dutiable list.] 384. Waste, not specially provided for in this section, 10 per centum ad valorem.

[Free list.] 408. Bagging for cotton, gunny cloth, and similar fabrics, suitable for covering cotton, composed of single yarns made of jute, jute butts, seg, Russian seg, New Zealand tow, Norwegian tow, aloe, mill waste, cotton tares, or other material not bleached, dyed, colored, stained, painted, or printed, not exceeding sixteen threads to the square inch, counting the warp and filling, and weighing not less than fifteen ounces per square yard; plain woven fabrics of single jute yarns by whatever name known, not bleached, dyed, colored, stained, printed, or rendered noninflammable by any process; and waste of any of the above articles suitable for the manufacture of paper.

566. Paper stock, crude, of every description, including all grasses, fibers, rags, waste, including jute, hemp and flax waste, shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for in this section, including old gunny cloth and old gunny bags, used chiefly for paper making.

586. Rags, not otherwise specially provided for in this section.

The protests were submitted upon exhibits and oral testimony to the Board of General Appraisers. Thereupon the board held that the merchandise was not in fact rags within the meaning of paragraph 586, supra, and this claim in the protest was accordingly overruled. The board furthermore held that the bagging in question was not paper stock such as is described in paragraph 408, supra, since this cloth is twilled and the threads exceed 16 to the square inch. For this reason the claim of the protest under paragraph 408 was overruled. The board, however, held that the importations were of mixed character, consisting in part of waste which was dutiable as assessed, and in part of paper stock such as is made free of duty by paragraph 566, supra. In respect to one of the protests, to wit, 797813, the board held that 50 per cent of the importation was free of duty under the latter paragraph, and in respect to the other protest, to wit, 802385, that 75 per cent was likewise free. The protests were therefore sustained to this extent, and overruled as to the residue.

The Government and the importers have filed cross appeals from this decision, the Government contending for the collector's assessment whereby the entire merchandise was held to be dutiable as waste not otherwise specially provided for, the importers contending for the free entry of all the merchandise as rags not otherwise specially provided for, or as paper stock such as is provided for by paragraph 566, supra.

It may be noted that the alternative claim made by the importers in their protests for the free entry of the merchandise as paper stock, such as is provided for by paragraph 408, supra, is abandoned in this court, since it is not included within the specifications of error presented by the importers in their petition.

The question, therefore, which now demands a decision is whether, upon the record, the imported merchandise is dutiable in whole or in part as waste under paragraph 384, supra, or is free of duty in whole or in part as rags under paragraph 586, supra, or as paper stock under paragraph 566, supra. Or, more accurately stated, the question is whether the decision of the board which divided the merchandise into fixed proportions between the several contending clasifications is sufficiently sustained by the evidence.

We agree with the finding of the board that the merchandise is not classifiable as rags. The pieces of bagging composing it are of such size and character as to preclude that description. The pieces, judging from the exhibits, are of comparatively large sizes, frequently

of the size of entire bags cut open at one end or side, and the fabric in most cases is still sound. This claim of the importers, therefore, is not sustained by the samples, nor is it sustained by the oral testimony contained in the record. See T. D. 31776 and illustrated appendix thereto at end of volume 21, Treasury Decisions, and decisions therein cited.

As already stated, the board found, upon the record, that the merchandise consisted in part of dutiable waste and in part of nondutiable paper stock; that these materials were capable of separation, and that the merchandise covered by protest 797813 consisted of paper stock to the extent of 50 per cent, while that covered by protest 802385 consisted of paper stock to the extent of 75 per cent.

It will be observed that paragraph 566, supra, in providing for the free admission of paper stock, limits this allowance to waste bagging, old gunny cloth, and old gunny bags, or other specified materials, such as are used chiefly for paper making. United States *v.* Crompton & Son (6 Ct. Cust. Appls., 197; T. D. 35442). It becomes important, therefore, to ascertain how far the record goes toward sustaining the board's finding that 50 per cent of the merchandise in protest 797813 and 75 per cent of that in protest 802385 are chiefly used for paper making.

Three witnesses were examined at the trial before the board. Two of these were Government examiners who severally inspected and passed the merchandise, namely, Mr. Ulrich and Mr. Hirtle; the third, namely, Mr. Broidy, was an officer of the company for whose account the merchandise had been imported.

Giving consideration first to the merchandise covered by protest 797813 we find that Mr. Hirtle, the examiner who passed it, testified in part as follows:

Q. How carefully did you examine this merchandise?—A. Carefully enough to arrive at an estimate of what the condition and quality of the importation consisted of.

Q. That sample bale was sent to the appraiser's store here?—A. I don't think so.

Q. You examined it all on the wharf?—A. I think so.

Q. Did you break the bales open?—A. A number of bales broken out.

Q. Then this official sample is fairly representative of all the merchandise in that case (protest)?—A. It is.

Q. You say in your report that the merchandise consists of sugar bags made of twill burlap which has been damaged so that they could not be used as bags, and you assessed them under paragraph 384, as waste, at 10 per cent. Now, you are familiar, I believe, with the provisions of paragraph 566?—A. I am.

Q. State whether or not any merchandise in this case would in your judgment come under paragraph 566?—A. It can be used for paper stock.

Q. What proportion of the merchandise in this case could be used for paper stock, do you suppose?—A. They could use anything for paper stock—all of it if they want to, for certain kinds of paper.

Q. I notice in your report as distinguished from the report of the examiner in the previous case (protest 802385), you made no mention of the fact that the reason you assessed it at 10 per cent was because the merchandise could be used as patches for cotton bales?—A. I did not.

Q. In your opinion any of the merchandise in this case could be used for cotton patches?—A. I do not know.

Q. In your opinion?—A. I do not know; I did not assess it with that intention.

In respect to the same protest, to wit, 797813, Mr. Broidy testified in part as follows:

Q. Will you first please take the burlaps (samples) covered by protest 797813 and put into two piles those bags which could be used, in your judgment, for cotton patches, and those which could not be used for cotton patches but waste bagging. Separate the piles.

(Witness separates the samples into two piles, as instructed.)

Mr. LOCKETT. For purposes of identification, this official sample in protest 797813 has been sorted into two divisions, and I ask that this division under my feet [indicating same] be marked illustrative Exhibit A, and this other one illustrative Exhibit B.

Judge BROWN. In view of possible confusion let there be two different protest numbers for the samples.

(The two divisions of the official samples in protest 797813 are accordingly marked illustrative Exhibits A and B, respectively, protest 797813.)

Q. I call your attention to illustrative Exhibit A, protest 797813, and ask you for what, in your opinion, the merchandise covered by that part could be used?—A. For scrap bagging, for paper purposes, or for "batz."

Q. What is a "batz"?—A. Made of shoddy for the cushions of automobiles and such things.

Q. State whether or not any of that merchandise covered by illustrative Exhibit A would be used for paper stock.—A. It could be used for the cheaper grade of paper stock.

Q. But you would classify it as waste bagging?—A. As scrap bagging.

Mr. BALDWIN. I ask that the question and answer be stricken out. The board is entitled to form its own conclusion from the use, but simply to ask this witness's opinion is not competent.

Judge BROWN. I will sustain the objection (grant the motion).

Q. Mr. Broidy, I call your attention to illustrative Exhibit B, protest 797813, and ask you to state whether or not that bagging could be sold by you in your business?—A. If it should have the size after the burlap part of it is cut off.

Q. Then illustrative Exhibit A has four bags and illustrative Exhibit B has one bag. That means four-fifths of the bags in this sample (protest 797813) according to your previous testimony could be used for paper stock as compared with illustrative Exhibit B?—A. That is it.

Q. State whether or not, according to your best recollection, the percentage of division as represented by these illustrative Exhibits A and B fairly represents the stock as it turned out to be.—A. No.

Q. That being so, state what percentage—and bear in mind we are talking all the time of the importation covered by protest 797813—state what percentage of the merchandise in 797813 could have been used for patches.—A. I don't think there was any percentage there to speak of, because the labor of it would have amounted to more than the stuff would be worth.

Q. Then state to what proportionate extent illustrative Exhibit A represents the merchandise covered by protest 797813, from your examination.—A. Probably 80 to 85 per cent.

The foregoing is substantially all of the testimony relating to the merchandise covered by protest 797813, and we do not think that it sufficiently sustains the board's finding that 50 per cent of it was of such a kind as would be chiefly used for paper making. To the

contrary, the witnesses seem carefully to limit their answers to the statement that the merchandise in some measure *could* be used for paper making. In answer to one of the questions put to him, Mr. Hirtle said: "They could use anything for paper stock—all of it if they want to, for certain kinds of paper." Mr. Broidy divided the samples into two piles, marked, respectively, "A" and "B." He stated that the first kind could be used for scrap bagging, for paper purposes, or for "batz." The latter use, he explained, is for making shoddy for automobile cushions and like articles. When asked, as appears above, "whether or not any of that merchandise covered by illustrative Exhibit A would be used for paper stock," he answered, "It could be used for the cheaper grade of paper." Even this statement does not appear to have been made concerning illustrative Exhibit B under the same protest.

We therefore conclude that the testimony relating to protest 797813 virtually goes no further than to show that part or all of the merchandise covered by it could be used for paper making, without showing what, if any, part of it actually would be chiefly used for that purpose. It is clear that this proof is not sufficient to sustain the protest.

In respect to protest 802385, Mr. Ulrich testified in part as follows:

Q. By that do you mean that about half of this was of a character which may be considered to be used chiefly for paper making?—A. Yes, sir.

Mr. BALDWIN. That is all.

Q. (By Mr. LOCKETT.) How did you arrive at that estimate of 50 per cent?—A. I had a bale of the house and went through it and drew samples just as they came to me, and about 50 per cent of that consisted of twilled bagging and cut sugar bags, which are dutiable, and I had to recognize the fact that those articles were those.

Q. Then, as I understand it, the result of your examination was that 50 per cent of that is fit for paper stock and the other 50 per cent was properly classified as waste. I am speaking of the whole shipment. Do you understand me?—A. No.

Q. As I understand it, you classified this merchandise, and from your statement in answer to a question you stated that about 50 per cent was used for paper stock?—A. Yes, sir.

Q. Then the converse would be true that the remaining balance, which would be 50 per cent, was properly classified as waste?—A. That is right.

Respecting the same protest Mr. Broidy testified as follows:

Q. Now, Mr. Broidy, I show you the sample in protest 802385 (heretofore marked "Exhibit 1") and ask you to sort the bags, as you did in the case of the previous protest. Put into one pile those which could only be used for paper stock and cheap stuff and the other pile which could be used for cotton patches.

(Witness makes the separation as requested.)

Mr. LOCKETT. For purposes of identification I ask that the bundle under my feet be marked "illustrative Exhibit A, protest 802385," and the other pile "illustrative Exhibit B, protest 802385."

(So ordered.)

Q. Now, Mr. Broidy, I call your attention to illustrative Exhibit A, protest 802385, and ask you to state whether or not the bags covered by that exhibit could be used for cotton patches?—A. Yes, sir.

Q. Will you examine them carefully and determine whether bags of that particular quality could be used for cotton patches?—A. Yes, sir.

Q. In other words, in your opinion, bags represented by illustrative Exhibit A are of sufficient cleanness and strength so that they could be used for cotton patches?—A. Yes, sir.

Q. I now call your attention to illustrative Exhibit B, protest 802385, and ask you to state whether or not merchandise represented by that exhibit could be used for cotton patches?—A. No, sir.

Q. What could it be used for?—A. Some of them could be used for general baling purposes.

Q. State whether or not the merchandise represented by illustrative Exhibit B would be used for paper stock—could be used?—A. Most of it—all of it could be used for paper stock. Everything in the line of bagging could be used. Most of this would go for paper; Exhibit B would go for paper stock, but part of it would go for general baling purposes.

Q. Illustrative exhibit, protest 802385, has eight bags and illustrative Exhibit A, protest 802385, has three bags?—A. Yes, sir.

Q. State whether or not as the result of your observation from an examination of the merchandise covered by this protest at your store, whether the proportion of eight bags covered by illustrative Exhibit B, which could be used for cotton patches, as compared with the three bags covered by Exhibit A, which could be used for cotton patches, is fairly representative of the entire shipment?—A. No, sir.

Q. I ask you to state what percentage of the entire shipment covered by this protest 802385, of which Exhibits A and B are samples, could be used for cotton patches?—A. I don't think that was 5 per cent.

Q. In other words, only 5 per cent?—A. Not even 5 per cent could be used for cotton patches.

Q. Then, in other words, you think about 95 per cent could be used for paper stock and for waste bagging?—A. That is it.

Q. As old gunny bagging?—A. Yes, sir.

We think that the foregoing testimony, having reference especially to that given by Mr. Ulrich, is sufficient to sustain protest 802385 to the extent of 50 per cent of the merchandise covered by it, but no more. The testimony of Mr. Broidy in reference to this protest goes no farther than his testimony relating to the former one; the same conclusion therefore follows because of the reasons already advanced respecting the other protest and which need not be specifically repeated at this point.

In accordance with these views, the decision of the board will be modified so as to sustain the collector's assessment in protest 802385 to the extent of 50 per cent only and reverse it as to the residue, and so as to affirm the collector's assessment in protest 797813.

*Modified.*